Hamlin, J.
INTRODUCTION
Pursuant to G.L.c. 40B, §21, the defendant, Town of Concord Board of Appeals (“Board”), issued a comprehensive permit to the' defendant, Concord Housing Authority (“CHA”), for the construction of low-income housing on property previously under the control of the Concord School Committee (“School Committee”). The plaintiffs brought this appeal, pursuant to G.L.c. 40A, § 17, claiming that the Board did not have authority to grant the CHA a comprehensive permit and seeking to annul the Board’s decision.[4] In addition, the plaintiffs contend that when Eliot Wilbur read a Memorandum of Agreement, signed by the Concord Board of Selectmen (“Selectmen”) and the CHA and imposing minimum conditions on the project, to the Town Meeting that the Town Meeting then voted a limited authorization to the Selectmen to convey the property. This matter is now before the court on the defendants’ motion for summary judgment. For the reasons set forth below, the defendants’ motion for summary judgment is ALLOWED.
FACTS
In October 1991, the CHA attended a School Committee meeting and requested permission to explore the possibility of using school lands for constructing low-income housing. On December 3, 1991, under the caption “Vote to Convey School Land to the Concord Housing Authority,” the School Committee voted unanimously to declare certain land at the Willard School excess to school needs. The excess land consisted of approximately 1.7 acres in the northeast corner of the school property (hereinafter “the Site”).
On April 8, 1992, a Town Meeting was scheduled and its agenda included a vote on Article 48, i.e., whether to authorize the Selectmen to convey the Site to the CHA “for nominal consideration and upon such terms and conditions as the Board of Selectmen deems appropriate . . .” On April 7, 1992, prior to the Town Meeting, the Selectmen and the CHA signed a Memorandum of Agreement referencing the terms and conditions language in Article 48 and providing that;
at a minimum, those terms and conditions shall include the following:
Development on the site shall be limited to no more than six units of housing to be built consistent with the height and setback dimensional regulations of the Zoning ByLaw.
Development on the site shall be for family housing only.
A buffer shall be provided between the 1.7 acre parcel and the school property and efforts shall be made to retain existing vegetation wherever possible.
No development or alteration of existing conditions shall take place on the portion of the site outside *675 the existing treeline adjacent to Powder Mill Road, noted on the attached sheet as ‘Undisturbed Area.’
Vehicular access to the 1.7 acre parcel shall be provided from Powder Mill Road.
Prior to conveyance, the Board of Selectmen shall seek Planning Board review of the proposed development.[5]
At the Town Meeting on April 8, 1992, much discussion ensued about Article 48. At one point during the discussions, Richard Kelleher proposed to amend Article 48 by including six specific conditions. After the motion to amend was seconded, Mr. Wilbur, on behalf of the Board of Selectmen, spoke and told the Town Meeting that the Selectmen and the CHA had already agreed to a set of conditions. Mr. Wilbur stated, “Speaking to the amendment I think it should be said that the Board of Selectmen and the Housing Authority have prepared a set of conditions. Both have signed off, all members of both boards have signed off on these conditions. I would like to take the time to read them because I think it’s relevant to the amendment.” Mr. Wilbur then read the Memorandum of Agreement and stated, “I believe we are trying very hard to address many of the concerns raised in [Mr. Kelleher’s] amendment. There comes a point where you can’t be too restrictive because again it can restrict the design . . . And I would urge that we not accept this amendment.”
Mr. Kelleher responded to Mr. Wilbur’s comments by pointing out differences in his amendment. The moderator then called for a vote on Mr. Kelleher’s amendment, which failed to achieve a majority vote. After more discussion on the pros and cons of the low-income project, the Town Meeting voted on Article 48, which passed by a two-thirds majority (390 to 184).
On December 8, 1992, the Legislature enacted St. 1992, c. 252, “AN ACT relative to the use of a certain parcel of land in the town of Concord for housing purposes.” The Act provided that, “Notwithstanding the provisions of section fifteen A of chapter forty of the General Laws or any other general or special law to the contraiy, the town of Concord is hereby authorized to permit the use of a certain parcel of . . . [the Site] by the Concord Housing Authority for housing purposes.”
On September 8, 1994, the Board, pursuant to G.L.c. 40B, §21, granted the CHA a comprehensive permit for the Site, subject to certain conditions. The Board stated that approval was based on the plans submitted by the CHA dated May 23, 1994; that the plans shall be revised in accordance with the Planning Board’s recommendations in its July 13, 1994 letter; and that the additional conditions set forth by the Planning Board be complied with. Moreover, the Board waived the requirements for frontage and lot width, the requirement of an earth removal permit, and the requirements of section 4.2.1 of the Bylaw.[6] The Board also concluded that the Selectmen were free to change the conditions set forth in the Memorandum of Agreement as evidenced by the passage of Article 48 and that, in any event, “the Board agrees with the Planning Board’s August 15, 1994, letter and with the judgment of the Building Inspector that ‘set-back dimensional requirements,’ as used in the Memorandum of Agreement, only encompasses front, side and rear-yard setbacks specified in Sections 6.2.6, 6.2.7, and 6.2.8 of the zoning bylaw. Therefore, Petitioner’s project at Powder Mill Road is clearly consistent with the terms and conditions of the Memorandum of Agreement as written.” In addition, the Board found that the CHA had sufficient control of the Site and that the School Committee was waiting for the Board to issue a comprehensive permit before relinquishing ultimate control of the site.[7]
On September 27, 1994, the School Committee voted unanimously “[t]o relinquish control of the 1.7 acres of land at Willard School as voted at the Spring 1992 Town Meeting.” On December 12, 1994, the Selectmen deeded the Site to the CHA with the following six express conditions:
1. No more than six (6) housing units shall be constructed on said Parcel. The housing constructed on the Parcel shall be family housing . . .
2. Construction of said housing units shall be substantially completed on or before April 14, 2002
3. Said housing shall be built in accordance with a Comprehensive Permit issued by the Town of Concord Board of Appeals under M.G.L. Chapter 40B Section 21 as the same may be amended from time to time, and consistent with applicable state and local building codes as affected by said Comprehensive Permit.
4. A buffer shall be provided within the area to the east of the Treeline’ as shown on the Plan. There shall be no cutting or clearing of vegetation within this buffer except for routine maintenance ... [or majority vote of Selectmen].
5. Vehicular access to the . . . parcel shall be only from Powder Mill Road.
6. No development, construction, placement of structures or alteration of existing conditions shall take place on the portion of the Parcel to the west of the line designated on the Plan as Treeline’ within the area designated on the Plan as ‘Open Area.’
The deed also states that, “[t]he foregoing conditions numbered 1 through 6 are solely for the benefit of the Town of Concord, and may be enforced on behalf of said Town only by the Board of Selectmen and not by any third party.”
*676 DISCUSSION
A. Standard of Review
1. Appeal Pursuant to G.L.c. 40A, §17
Prudential Ins. Co. of America v. Board of Appeals of Westwood, 23 Mass.App.Ct. 278, 282 n.7 (1986), sets out the following judicial standard of review for appeals pursuant to G.L.c. 40A, §17:
“In a word, the matter is heard de novo and the judge makes his own findings of fact, independent of any finding of the board . . . The judge is not confined to hearing only the evidence before board . . . Such review confines the function of the court to its usual and proper function of applying established law to established facts . . . The decision of the board is no more than the report of an administrative body and on appeal has no evidentiary weight. . . The judge ... is to ... determine the legal validity of the decision of the board upon the facts found by him . . .” (citations omitted).
2. Summary Judgment
Summary judgment is appropriate where there are no genuine issues of material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). A party in a civil action moving for summary judgment on a claim on which the opposing party will have the burden of proof at trial is entitled to summary judgment if it demonstrates that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). As the defendants have moved for summary judgment on an appeal pursuant to G.L.c. 40A, §17, this court has relied on the summary judgment record to base its facts and will now consider the summary judgment motion.
B. Analysis
The plaintiffs set forth two grounds challenging the issuance of the comprehensive permit. First, the plaintiffs claim that the Board did not have authority to grant the CHA a comprehensive permit, as the CHA did not have sufficient control of the site, and seek to annul the Board’s decision. Second, the plaintiffs contend that the Town Meeting only voted the Selectmen a limited authorization to convey the Site, that was violated when the Selectmen deeded the property to the CHA without imposing the “minimum conditions” set forth in the Memorandum of Agreement.
1. Comprehensive Permit
G.L.c. 40B, §§20-23, permit a qualified applicant interested in building low-income housing to file a comprehensive permit instead of filing separate applications with each local agency or official having jurisdiction over various aspects of the proposed project. See Board of Appeals of Hanover v. Housing Appeals Committee, 363 Mass. 339, 345 (1973); Zoning Bd. of Appeals of Greenfield v. Housing Appeals Committee, 15 Mass.App.Ct. 553, 556 (1983). “To be eligible to submit an application for a comprehensive permit or to file or maintain an appeal before the Committee, the applicant and the project shall fulfill the following jurisdictional requirements: (a) The applicant shall be a public agency, a non-profit organization, or a limited dividend organization, (b) The project shall be fund-able by a subsidizing agency under a low and moderate income housing subsidy program, (c) The applicant shall control "the site” (emphasis added). 760 Code Mass. Regs. §31.01(1). The plaintiffs argue that part (c), above, was not met and that the Board’s grant of a comprehensive permit should be annulled. This court disagrees.
While plaintiffs argue the CHA did not have “control” over the Site, the statutory scheme “does not require the applicant for a comprehensive permit to establish before the board or committee a present title in the proposed site.” Board of Appeals of Hanover v. Housing Appeals Committee, supra at 378. “Ownership of a site is not a condition precedent to the right of a public agency to seek a comprehensive permit under G.L.c. 40B.” Bailey v. Board of Appeals of Holden, 370 Mass. 95, 97 (1976). In fact, the Supreme Judicial Court has stated that “a public agency . . . proposing to operate low or moderate income housing should be considered a proper applicant for a comprehensive permit.” Board of Appeals of Hanover v. Housing Appeals Committee, supra at 378 n.24.[8]
In the case at bar, the School Committee “Voted to Convey School Land to the Concord Housing Authority,” and declared the Site excess land after the CHA expressed interest in developing low-income housing. The Town Meeting then passed Article 48 that permitted the Selectmen to convey the Site to the CHA upon such terms and conditions as it deemed appropriate. The CHA and Selectmen also reached a Memorandum of Agreement concerning the specific conditions that the CHA must follow when constructing the six units of low-income housing. Moreover, the CHA’s evidence that the School Committee was waiting for the Board to issue a comprehensive permit before relinquishing ultimate control of the site is unrefuted. In addition, special legislation was passed authorizing the Town of Concord to permit the use of the Site by the CHA for housing purposes notwithstanding any general or special laws to the contrary. In light of the foregoing, this court concludes that the CHA has sufficient “control" of the Site under the purview of 760 Code Mass. Regs. §31.01(1) and G.L.c. 40B.[9]
2. Conditions Set forth in Memorandum of Agreement
The CHA and Selectmen signed a Memorandum of Agreement on April 7, 1992. The plaintiffs argue that the vote on Article 48 on April 8, 1992, incorporated the Memorandum of Agreement and granted the Selectmen a limited authorization to convey the Site. *677 While the Memorandum of Agreement was read at the Town Meeting, it was not incorporated into Article 48.
Article 48 is clear on its face that it authorizes “the Board of Selectmen to convey [the Site] to the [CHA] for nominal consideration and upon such terms and conditions as the Board of Selectmen deems appropriate ...” Mr. Kelleher proposed to amend Article 48 by adding specific conditions, which was seconded. In opposition, Mr. Wilbur told the Town Meeting, on behalf of the Selectmen, that the addition of specific conditions was not necessary as the CHA and Selectmen had already agreed to similar conditions and that the Town Meeting was well-represented by the Selectmen. Mr. Wilbur’s recitation of the conditions was designed to demonstrate to the Town Meeting that the Selectmen had already agreed to certain conditions and in support of the argument that “[t]here comes a point where you can’t be too restrictive because again it can restrict the design.” Mr. Kelleher’s motion to amend was then defeated.
Subsequently, Article 48 passed by a two-thirds vote in its unamended state. The Selectmen did not have a limited authorization to convey the Site from the Town Meeting.[10]
ORDER
Based upon the foregoing reasons, it is hereby ORDERED-that the defendants’ motion for summary judgment is ALLOWED.

G.L.c. 40B, §21 provides, in pertinent part: “[a]ny person aggrieved by the issuance of a comprehensive permit or approval may appeal to the court as provided in section seventeen of chapter forty A.”

The Memorandum of Agreement also included five-year and ten-year conditions subsequent that would make the authorization from Article 48 null and void.

The Concord Bylaws, in full, are not properly before this court.

A letter dated August 11, 1994, from the United States Department of Housing and Urban Development (HUD) determined that the CHA had sufficient control of the Site, but a follow-up letter dated September 2, 1994 withdrew that statement. HUD noted that it had only made a preliminaiy determination and “until the Concord/Carlisle School Committee has relinquished control of the site, the [CHA] would not appear to have the control required for jurisdiction under 760 CMR 31.01.” HUD concluded by stating that “until those issues can be resolved to the satisfaction of this office, we do not feel that it is appropriate to make even a preliminaiy determination as to the sufficiency of the interest of the [CHA] in the subject land.” In any event, the Board stated that the CHA “has shown sufficient interest in and control of the site to satisfy 760 CMR 30.01(l)(c) even without this letter.”

The Supreme Judicial Court also stated that “a housing authority proposing to operate a program constructed by a private developer should be considered a proper applicant for a comprehensive permit.” Board of Appeals of Hanover v. Housing Appeals Committee, supra at 368 n.20.

This court need not address defendants’ contention that it cured any lack of control in the Site by subsequently accepting a conveyance.

Although this court concludes that there is no limited authorization, it appears, without fully addressing the issue, that the Selectmen could enforce their Memorandum of Agreement with the CHA. It also appears to this court, however, that the conditions set forth in the Memorandum of Agreement have been substantially incorporated into the deed.

This matter has been consolidated with Middlesex Superior Court Civil Action No. 95-2202, which was brought as an action for declaratory judgment pursuant to G.L.c. 231A. “Where there has been a formal board decision, [however, an] applicant cannot avoid the requirements of G.L.c. 40A merely by framing his challenge as a request for a declaratory judgment.” Colangelo v. Board of Appeals of Lexington, 407 Mass. 242, 247 (1990); see Iodice v. Newton, 397 Mass. 329, 333 (1986) (stating “(t]he present action is no less an appeal under c. 40A, §17, because it takes the form of a G.L.c. 231A, declaratory judgment action”).