# Town of Wrentham[1] *vs.* Housing Appeals Committee & another.[2]

No. 06-P-587.

Suffolk. March 13, 2007. - June 27, 2007.

Present: Gelinas, Grasso, & Graham, JJ.

Further appellate review granted, 449 Mass. 1112 (2007).

*Housing. Zoning,* Housing appeals committee, Low and moderate income housing, Comprehensive permit. *Administrative Law,* Judicial review, Exhaustion of remedies. *Declaratory Relief.*

Discussion of G. L. c. 40B, §§ 20-23, which establishes a comprehensive permit process for developers wishing to build affordable housing. [452-453]

Where a town denied a developer's application to construct an affordable housing development pursuant to the comprehensive permit statute, G. L. c. 40B, §§ 20-23, based solely on the town's determination that it had already met its minimum housing obligation, the housing appeals committee (HAC) did not lack jurisdiction to hear the developer's appeal, where the question whether the town had met its obligation was a factual question entrusted to the expertise of the HAC in the first instance. [453-455]

A trial court judge did not err in dismissing a town's complaint for judicial review of an order of the housing appeals committee that directed the town to consider the merits of a comprehensive permit application filed by a developer, where the order was not a final decision subject to judicial review [455-456], and the town's request for a declaratory judgment did not operate to suspend the requirement that the town exhaust its administrative remedies [456-458].

CIVIL ACTION commenced in the Superior Court Department on August 12, 2005.

A motion to dismiss was heard by *John C. Cratsley,* J.

*Daniel C. Hill* for the plaintiff.

*Juliana deHaan Rice,* Assistant Attorney General, for Housing Appeals Committee.

GRASSO, J. The town of Wrentham appeals from a judgment

---

[1]Acting by and through its zoning board of appeals.

[2]West Wrentham Village, LLC.

dismissing its complaint for judicial review and a declaratory judgment with respect to an order of the housing appeals committee (HAC) that directed the town to consider the merits of a comprehensive permit application filed by West Wrentham Village, LLC (developer). See G. L. c. 40B, §§ 20-23. A Superior Court judge ruled that (1) the order of remand is not a final decision subject to judicial review and (2) the town had failed to exhaust its administrative remedies. See Mass.R.Civ.P. 12(b)(1), 365 Mass. 754 (1974).

On appeal, the town contends that the order is a final decision, and that it is entitled in any event to a declaration that it has satisfied its minimum housing obligation under the comprehensive permit statute. We affirm the judgment of dismissal.

1. *Background.* In 2004, the developer filed an application to construct an affordable housing development pursuant to the comprehensive permit statute, G. L. c. 40B, §§ 20-23. After commencing a public hearing, but without considering the merits of the developer's proposal, the town denied the application based solely on the determination that it had fulfilled its minimum housing obligation, an obligation achieved when at least ten per cent of a town's housing units are low or moderate income housing. See G. L. c. 40B, § 20; *Zoning Bd. of Appeals of Wellesley* v. *Ardemore Apartments Ltd. Partnership*, 436 Mass. 811, 815 & n.10 (1982). The town's calculation included as units of "low or moderate income housing" housing provided to residents at the Wrentham Developmental Center (WDC), a facility owned and operated by the Department of Retardation (DMR) to provide services for the mentally disabled including diagnostic, training, school, residential, and employment services.[3] See G. L. c. 19B, § 13. The developer appealed to HAC, a division of the Department of Housing and Community

---

[3]The basis on which the town equates residences at the WDC with units of affordable housing is unexplained on the record, but appears to equate the number of residences at the WDC with units of affordable housing for purposes of the statutory minimum housing obligation. As support for such a view, the town points to 760 Code Mass. Regs. § 30.02 (2002), which defines "low or moderate income housing" as: "any units of housing subsidized by federal [] or state government [] or local housing authority under any program to assist the construction or substantial rehabilitation of low or moderate income housing, as defined in the applicable federal or state statute or regulation. . . . Low or moderate-income housing shall include housing

Development (DHCD). See G. L. c. 40B, § 22 (where compre-
hensive permit application is denied, applicant shall have the
right of appeal to HAC).

There, the town moved to dismiss, asserting that HAC did
not have jurisdiction because the town had already satisfied its
minimum housing obligation. HAC disagreed, concluding that
the town had miscalculated its eligible affordable housing units
by including over 300 "units" at the WDC.[4] HAC denied the
town's motion and remanded the developer's application to the
town for substantive consideration.

The town then filed a complaint in the Superior Court seek-
ing (1) judicial review of HAC's order; and (2) a declaration
that the WDC comprises units of affordable housing against the

subsidized by the federal, state, or local government to provide long-term
housing for individuals who are mentally ill or mentally retarded, including all
group home units in each community as reported annually to the Department
[of Housing and Community Development] by the . . . department of mental
retardation."

[4]The parties do not dispute that the town has 3,477 housing units, requiring
at least 348 units of affordable housing to meet the minimum housing
obligation. According to the inventory of affordable housing (subsidized hous-
ing inventory) maintained by DHCD, the town had only 147 affordable units.

DHCD computes this inventory pursuant to 760 Code Mass. Regs.
§ 31.04(1)(a), guided by the definition of low or moderate income housing
contained in 760 Code Mass. Regs. § 30.02.

In concluding that residences at the WDC did not count as 300 units of af-
fordable housing against the town's minimum housing obligation, HAC noted
that the law and regulations establishing the WDC did not express an intent to
provide affordable housing. See G. L. c. 19B, §§ 7, 13; 115 Code Mass. Regs.
§ 3.03. Rather, the focus is on providing services for the mentally disabled.

HAC further noted that the WDC is "located on a campus-like setting . . .
with on-site staffing such as direct care workers, nurses, psychologists, clini-
cians, therapists, qualified mental retardation professionals and other
specialists. Most of the day programming and recreational activities that
residents participate in takes place on campus."

In consequence, the DHCD and the DMR reached a joint decision that
housing provided by the WDC should not be included as affordable housing
in the State's subsidized housing inventory because institutions such as WDC
are more akin to prisons, special needs schools, and military housing, which
are not eligible to be included as affordable housing. Housing provided to
members of institutional communities may be affordable, but it is not
ordinarily available to members of the community at large.

Giving deference to DHCD's interpretation of 760 Code Mass. Regs.
§ 30.02, HAC concluded that such a position was not unreasonable.

town's minimum housing obligation such that the town may properly deny the developer's application on that ground.[5] A judge of the Superior Court concluded that the order of remand was neither final nor appealable, and that the town "must exhaust its administrative remedies through the remand and agency review process with a full record." He dismissed the town's complaint for lack of subject matter jurisdiction without passing on whether residences at the WDC should be counted as units of affordable housing. The judge did not err.

2. *Discussion.* "General Laws c. 40B, §§ 20-23, sometimes referred to as the anti-snob zoning act . . . was enacted 'to provide relief from exclusionary zoning practices which prevented the construction of badly needed low and moderate income housing.' " *Zoning Bd. of Appeals of Wellesley* v. *Ardemore Apartments Ltd. Partnership*, 436 Mass. at 814, quoting from *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 354 (1973). To that end, the statute creates a framework whereby a developer who wishes to build affordable housing may file an application for a comprehensive permit rather than seek separate approval from each local board having jurisdiction over the project. See *Zoning Bd. of Appeals of Wellesley, supra* at 815. "If a local zoning board denies an application for a comprehensive permit, or approves an application but imposes conditions that make the project 'uneconomic,' . . . the applicant may appeal to HAC . . . which conducts a de novo review to determine whether a local zoning board's decision is 'reasonable and consistent with local needs.' " *Ibid.*, quoting from G. L. c. 40B, §§ 20, 22, 23. If HAC finds that the decision of the local board is not justified, it may direct the local board to issue a comprehensive permit. *Ibid.* The comprehensive permit and review process operate as a buffer against "not in my backyard" decision making and local efforts to defeat a project through a war of attrition. See *Dennis Hous. Corp.* v. *Zoning Bd. of Appeals of Dennis*, 439 Mass. 71, 78 (2003); *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 28 (2006).

---

[5]The town maintains that the remand order is a final order, appealable under G. L. c. 30A, or, alternatively, presents an actual controversy cognizable as a declaratory action under G. L. c. 231A.

While expressing the legislative judgment that all communities are obliged to provide affordable housing, the statute also provides that a community that has met its minimum housing obligation need not share unwillingly a greater burden. The statute creates a conclusive presumption that a decision to deny a comprehensive permit (or to approve with conditions and requirements) *"shall be consistent with local needs when imposed by a board of zoning appeals after comprehensive hearing in a city or town where [the statutory minimum housing obligation is met]"* (emphasis supplied). G. L. c. 40B, § 20, inserted by St. 1969, c. 774, § 1.[6] In statutory terms, the decision to deny a permit is per se "consistent with local needs" if made "after comprehensive hearing" by a town that has already met its minimum housing obligation. See G. L. c. 40B, § 20.[7]

a. *HAC's jurisdiction.* On the developer's appeal to HAC, the town argued that HAC lacked jurisdiction because the town had already met its minimum housing obligation. See *Zoning Bd. of Appeals of Wellesley, supra* at 815-816 (if town has already met its share of low and moderate income housing, it may deny an application for a comprehensive permit and HAC has no authority to order a local board to issue one). We disagree. Whether the town has met its statutory share of low and moderate income housing is a factual question entrusted to the expertise of HAC

[6]In pertinent part, G. L. c. 40B, § 20, as amended by St. 1992, c. 403, § 5, provides that requirements and regulations "shall be considered consistent with local needs if they are reasonable in view of the regional need for low and moderate income housing considered with the number of low income persons in the city or town affected and the need to protect the health or safety of the occupants of the proposed housing or of the residents of the city or town, to promote better site and building design in relation to the surroundings, or to preserve open spaces, and if such requirements and regulations are applied as equally as possible to both subsidized and unsubsidized housing. Requirements and regulations shall be consistent with local needs when imposed by a board of zoning appeals after comprehensive hearing in a city or town where (1) low or moderate income housing exists which is in excess of ten per cent of the housing units reported in the latest federal decennial census. . . ."

[7]A town may meet its minimum housing obligation in any one of three ways: (1) at least ten per cent of the town's housing units are low or moderate income housing (a housing unit minimum); (2) a certain percentage of land area with affordable units; or (3) a certain amount of land devoted to construction of affordable units in one calendar year. G. L. c. 40B, § 20.

Here, the town relies on the housing unit minimum.

in the first instance.[8] See *Zoning Bd. of Appeals of Greenfield* v. *Housing Appeals Comm.*, 15 Mass. App. Ct. 553, 558 (1983) (town has burden of proving that units should be counted toward satisfying its minimum housing obligation).

Here, the town did not hold a comprehensive hearing on the merits of the developer's proposal, but instead denied the application based solely on *its* determination that it had met the minimum housing obligation. HAC clearly has jurisdiction to determine in the first instance whether a denial of a comprehensive permit application comports with the statute when that denial is predicated on asserted compliance with the town's minimum housing obligation. See *id.* at 557-561 (in appeal from denial of comprehensive permit, HAC has jurisdiction to consider and determine whether town has met its minimum housing obligation). To hold otherwise would permit a town in effect to rewrite the statute, eliminating HAC's statutorily granted oversight of a denial of a comprehensive permit application, and frustrating the expeditious relief from exclusionary zoning practices that the statute is intended to remedy. The town may not short-circuit the statutory process and HAC's role in determining whether a denial is "reasonable and consistent with local needs" by a self-serving determination that it has already met its minimum housing obligation. *Ibid.* Whether a community has attained its statutory minimum housing obligation is a quintessentially factual determination that is not static, but subject to flux as the community's housing stock waxes or wanes over time. *Ibid.*

Moreover, the statutory language itself contemplates that an application for a comprehensive permit must receive comprehensive hearing and full consideration, not piecemeal review. See G. L. c. 40, §§ 20-21. The conclusive presumption afforded to a community that has already met its minimum housing obligation only arises "*after comprehensive hearing.*" See G. L. c. 40B, § 20. Such a temporal precondition to the statutory presumption reflects that compliance with minimum obligations is an important consideration, but not the only one that bears on

---

[8]In the interlocutory posture of this case, we need not resolve the merits of the town's challenge to DHCD's omission of the WDC from the subsidized housing inventory. See note 4, *supra.*

whether the decision is "reasonable and consistent with local needs." Indeed, while compliance with the statute's "minimum" housing obligation is a floor that a community must provide (and ultimately may justify denial of a permit), it is not a ceiling on the community's considered decision to provide more affordable housing than is mandated after comprehensive assessment of local needs. See *Boothroyd* v. *Zoning Bd. of Appeals of Amherst*, 449 Mass. 333, 340 (2007) (nothing in statute divests a board of appeals of its authority to grant a comprehensive permit once a town has satisfied its minimum affordable housing obligation); *Zoning Bd. of Appeals of Greenfield, supra* at 562 n.12.

b. *Availability of judicial review.* Judicial review is generally not available for agency decisions or actions that are not final. See G. L. c. 30A, § 14. Review under G. L. c. 30A, § 14, is only available after a final decision of an agency in an adjudicatory proceeding. See *Wilczewski* v. *Commissioner of Dept. of Envtl. Quality Engr.*, 404 Mass. 787, 792 (1989). No such final decision issued here.

While rejecting the town's contention that the WDC qualifies as units of affordable housing, HAC did not invoke its authority under G. L. c. 40B, § 23, to direct the town to approve the permit. Compare *Zoning Bd. of Appeals of Greenfield, supra* at 554-555. Rather, it directed the town to consider the merits of the developer's application. See *Anderson* v. *Planning Bd. of Norton*, 56 Mass. App. Ct. 904, 904-905 (2002) (order of remand not final when board retained discretion in reaching decision). An order of remand is customarily not final, "particularly when the operative verb in the order has been 'reconsider.' " *Federman* v. *Board of Appeals of Marblehead*, 35 Mass. App. Ct. 727, 729 (1994). See *Roberts-Haverhill Assocs.* v. *City Council of Haverhill*, 2 Mass. App. Ct. 715, 719-720 (1974). When an agency is allowed substantial leeway by a remand order, judicial review is premature because the questions on appeal may vanish or change by subsequent agency action. *Federman, supra* at 729.

The breadth of choices available to the town on remand demonstrates that the order is not a final decision subject to judicial review. See G. L. c. 30A, § 14; *Anderson, supra* at 904. Indeed, the question whether the town has met its minimum

statutory housing obligation may well be mooted as a result of the town's action on remand. Among other available options, the town may approve the comprehensive permit, with or without conditions (choosing to exceed its *minimum* housing unit obligation); deny the permit for environmental, safety or health reasons that outweigh the need for affordable housing; persist in denying the comprehensive permit solely on statutory minima grounds; or deny the permit, in tandem, for cause and on statutory minima grounds. HAC's remand order allows the town substantial leeway "in nuance and fundamental conclusion." *Federman, supra* at 729. So viewed, the order does nothing more than express the interlocutory view that *if* the town were to deny the application after comprehensive hearing, reliance on having met the statutory minimum housing obligation would not alone suffice to establish that the denial was "reasonable and consistent with local needs." Were HAC *then* to order the issuance of a comprehensive permit, its order would *then* be reviewable under G. L. c. 30A. See *Zoning Bd. of Appeals of Greenfield, supra* at 554-555. At present there is no such order. Nothing in *Cliff House Nursing Home, Inc.* v. *Rate Setting Commn.*, 378 Mass. 189, 191 (1979), or *Chief Justice for Admn. & Mgmt. of the Trial Court* v. *Massachusetts Commn. Against Discrimination*, 439 Mass. 729, 730 n.5 (2003) (final order doctrine inapplicable where agency appeals from judge's decision to remand a final agency ruling), entitles the town to immediate appeal of the interlocutory ruling of HAC.

Absent adjudicatory proceedings and a final decision, the Superior Court lacked jurisdiction to hear the town's G. L. c. 30A, § 14, claims. See *Westland Hous. Corp.* v. *Commr. of Ins.*, 346 Mass. 556, 557 (1963) (absent a final decision in an adjudicatory proceeding, G. L. c. 30A review not available).

c. *The declaratory judgment action.* The town fares no better by framing its request as one for declaratory judgment. "A proceeding for declaratory judgment in itself does not operate to suspend the ordinary requirement that a plaintiff exhaust . . . administrative remedies before seeking judicial relief."[9] *Gill* v. *Board of Registration of Psychologists*, 399 Mass. 724, 728-729

---

[9] Although the exhaustion requirement and the final order doctrine are "conceptually distinct," *Williamson County Regional Planning Commn.* v. *Hamilton Bank of Johnson City*, 473 U.S. 172, 192 (1985), the two principles

(1987), quoting from *Samuels Pharmacy, Inc.* v. *Board of Registration in Pharmacy*, 390 Mass. 583, 588 (1983). See *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination*, 364 Mass. 444, 450-451 (1973) (declaratory judgment not a substitute for administrative proceedings). Judicial review unavailable under G. L. c. 30A may not be obtained by seeking a declaratory judgment. See *Iodice* v. *Newton*, 397 Mass. 329, 333-335 (1986) (styling claim as one for declaratory judgment does not establish basis for judicial review that does not otherwise exist).

No actual controversy exists between an administrative agency and a party before it until the agency issues its final decision. See *Samuels Pharmacy, Inc.*, *supra* at 591-592 (dispute does not amount to actual controversy for purposes of declaratory judgment until final agency determination). This is but another way of expressing that administrative remedies must be exhausted before a declaration may be sought on the propriety of the agency's action. See *Wilczewski* v. *Commissioner of Dept. of Envtl. Quality Engr.*, 404 Mass. at 792 (courts must be careful not to invade province of administrative board in determining matters entrusted to the board in the first instance). Requiring that administrative remedies be exhausted enables the agency to develop a factual record, apply its expertise, exercise its discretion, and correct its own mistakes. The exhaustion requirement also promotes accuracy, efficiency, agency autonomy, and judicial economy. See *Christopher W.* v. *Portsmouth Sch. Comm.*, 877 F.2d 1089, 1094 (1st Cir. 1989).

We are not persuaded that this is one of the rare cases calling for relief from the exhaustion requirement and the final order doctrine. See *East Chop Tennis Club*, *supra* at 449 (exception to the exhaustion requirement generally not extended outside of the tax context); *Kelleher* v. *Personnel Administrator of the Dept. of Personnel Admn.*, 421 Mass. 382, 385 (1995) (exception to exhaustion requirement "if the case presents a purely

often overlap. "[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate." *Id.* at 193.

legal question of wide public significance"); *Balcam* v. *Hingham*, 41 Mass. App. Ct. 260, 266-267 (1996). Nor does the instant case fall within the exception to those doctrines that sometimes obtains when an administrative remedy is inadequate, e.g., where no fact-finding by the agency is necessary and immediate resolution of the legal question would be in the broader public interest. See *Norfolk Elec., Inc.* v. *Fall River Hous. Authy.*, 417 Mass. 207, 210-211 (1994). See also *Ciszewski* v. *Industrial Acc. Bd.*, 367 Mass. 135, 141 (1975).

HAC's position on the merits of the developer's proposal is far from clear, as the town has yet to consider the merits. Moreover, whether the WDC qualifies as units of affordable housing presents a fact-specific determination on which the agency's expertise should be brought to bear. See *Zoning Bd. of Appeals of Greenfield* v. *Housing Appeals Comm.*, 15 Mass. App. Ct. at 557-561. The correctness of HAC's conclusion in this regard is but one of the questions that may remain after comprehensive hearing and decision by the town and any administrative appeal therefrom. Even more significantly, permitting a piecemeal challenge to HAC's determination that the town has not met its minimum housing obligation works at cross purposes with the expedited action on affordable housing applications that the statute is designed to achieve. See *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. at 29.

*Judgment affirmed.*