JOHN BOOTHROYD & others[1] *vs.* ZONING BOARD OF APPEALS
OF AMHERST & others.[2]

Suffolk. May 9, 2007. - June 14, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Housing. Zoning,* Low and moderate income housing, Comprehensive permit.
*Practice, Civil,* Standing. *Words,* "Consistent with local needs," "Regional
need."

In an action brought by certain residents of a town challenging the grant by
the town's zoning board of appeals (board) of a comprehensive permit
under G. L. c. 40B, §§ 20-23 (Act), to a nonprofit corporation seeking to
build certain units of affordable rental housing, a Land Court judge properly
upheld the board's decision, which permissibly considered whether there
was a "regional need" for affordable housing after the town had fulfilled
its minimum affordable housing obligation under the Act, where that
consideration did not frustrate the purpose of the Act to ensure consistency
with local needs. [337-341]

The plaintiffs in a civil action lacked standing to challenge the legality of the
grant of a comprehensive permit under G. L. c. 40B, §§ 20-23, by a local
zoning board of appeals on the basis that it contained an unconstitutional
racial quota, where their claim was unsubstantiated and did not transcend
speculative personal opinion. [342]

CIVIL ACTION commenced in the Land Court Department on
February 1, 2002.

Motions for summary judgment were heard by *Alexander H.
Sands, III,* J.; the case was heard by him, and a motion to amend
the judgment was also heard by him.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

[1]William Chase, Thaddeus Dabrowski, Althea Dabrowski, Konnie Fox, William Chase, Peter Geraty, Daphne Geraty, Zahava Koren, Israel Koren, Stephen Locke, Gina Fusco, Douglas Lowing, Karen Lowing, Jenny Marshall, Susan Pynchon, Robert Quinn, Nancy DiMattio, Irvin Rhodes, Penny Rhodes, Dana Toutant, Stephen Toutant, Sudhakar Vamathevan, Lynn Vennell, Stephen Walkowicz, Kelly Keane Walkowicz, and Sean Werle.

[2]The town of Amherst; HAP, Inc.; and Richard S. Bogartz.

*John E. Garber* for the plaintiffs.

*Donald R. Pinto, Jr.,* for the defendants.

*David S. Weiss & Michael S. Rabieh,* for Citizens' Housing and Planning Association & others, amici curiae, submitted a brief.

*Juliana deHaan Rice,* Assistant Attorney General, for the Attorney General & another, amici curiae, submitted a brief.

GREANEY, J. We transferred this case here on our motion to decide whether the zoning board of appeals of Amherst (board), in granting a comprehensive permit under G. L. c. 40B, §§ 20-23 (Act), permissibly could consider whether there was a "regional need" for affordable housing after the town of Amherst had fulfilled its low or moderate income housing obligation under the Act (minimum affordable housing obligation).[3] We conclude that the board properly took this consideration into account, and we affirm the judgment that upheld the grant of the comprehensive permit. We also affirm the order denying the plaintiffs' motion to amend the judgment.

The background of the case is as follows. The defendant HAP, Inc. (developer), is a nonprofit corporation that provides affordable housing services in western Massachusetts. In May, 2001, the developer[4] applied to the board for a comprehensive permit under the Act to build twenty-six units of affordable

---

[3]A city or town has fulfilled its minimum affordable housing obligation "where (1) low or moderate income housing exists which is in excess of ten per cent of the housing units reported in the latest federal decennial census of the city or town or on sites comprising one and one half per cent or more of the total land area zoned for residential, commercial or industrial use or (2) the application before the board would result in the commencement of construction of such housing on sites comprising more than three tenths of one per cent of such land area or ten acres, whichever is larger, in any one calendar year; provided, however, that land area owned by the United States, the commonwealth or any political subdivision thereof, or any public authority shall be excluded from the total land area referred to above." G. L. c. 40B, § 20. For an overview of the Act, see *Zoning Bd. of Appeals of Wellesley* v. *Ardemore Apartments Ltd. Partnership,* 436 Mass. 811, 814-816 (2002); *Board of Appeals of Hanover* v. *Housing Appeals Comm.,* 363 Mass. 339, 345-346 (1973) (*Hanover*).

[4]At the time of application, the developer held an option to purchase the property from its then owner, Richard S. Bogartz. The developer later exercised its option and purchased the property in the name of Butternut Properties Limited Partnership, an entity controlled by it.

rental housing on a 4.1 acre parcel of land off of Route 116 in Amherst.[5] The project would involve the construction of three detached buildings, each containing eight units of townhouse-style housing; renovations to an existing farmhouse to create two new housing units; and the construction of an apartment for a resident manager within one of the new buildings. Two of the buildings would be three stories in height. Of the twenty-six units, the developer proposed three one-bedroom units, fourteen two-bedroom units, and nine three-bedroom units.

The site for the proposed project comprises property located in the R-O, or outlying residence, district of the residential zone.[6] The property lies on the eastern edge of a neighborhood known as Orchard Valley, which contains approximately 275 single-family homes. The proposed project violates various provisions of Amherst's zoning bylaw, including those pertaining to minimum lot area, maximum lot coverage, maximum floors on buildings, and parking. In addition, the bylaw provision pertaining to residential uses prohibits townhouses and apartments in the outlying residence district. During the relevant time frame, Amherst had fulfilled its minimum affordable housing obligation within the meaning of the Act.[7]

Following numerous public meetings and hearings, and several revisions to the project, the board voted unanimously to grant the comprehensive permit, subject to various conditions.[8] On February 22, 2002, the board issued the comprehensive

---

[5]In accordance with restrictions set forth in the Federal "Low Income Housing Tax Credits Program," the developer would not be able to rent affordable housing units to students.

[6]The town has seven residential districts: "R-LD," low density residence; "R-F," fraternity residence; "R-O," outlying residence; "R-N," neighborhood residence; "R-VC," village center residence; "R-G," general residence; and "PURD," planned unit residential development. The stated purpose of the outlying residence district "is to provide for lower density residential areas. In general, the R-O District is intended to be a transitional area between the low density R-LD District and medium density R-N District." The remaining zoning districts include five business districts, two industrial research park districts, one educational district, and five resource protection districts.

[7]The parties stipulated that, at all relevant times, "low or moderate income housing," as defined in G. L. c. 40B, § 20, existed in Amherst that was in excess of ten per cent of the housing units reported in the latest Federal decennial census of the town. See note 3, *supra*.

[8]The conditions included the following requirements: seventy per cent of

permit and a twelve-page decision. In its decision, the board concluded that the need for affordable housing in Amherst was not mitigated by the fact that the town had met its minimum affordable housing obligation. The board referred to a publication that concluded that an individual earning minimum wage would have to work ninety-seven hours per week to afford a two-bedroom apartment in Amherst. The board noted testimony presented to it that the vacancy rate in town is one per cent, and that 870 families are currently on the Amherst Housing Authority waiting list, having to wait three to six years for an affordable housing unit. The board concluded that the overwhelming need for affordable housing outweighed concerns about density, traffic, and other "constraints imposed by the zoning bylaw." The board went on to explain, detailing its reasoning, that the project would not have an adverse effect on the neighborhood.

Pursuant to G. L. c. 40B, § 21,[9] the plaintiffs, residents of Amherst (including some abutters to the proposed project site), challenged the board's decision to grant the comprehensive permit by filing a complaint in the Land Court. The plaintiffs asserted that the town bylaw provisions could not be superseded by the Act,[10] that the board's decision was invalid due to prejudgment and conflict of interest on the part of at least one board member, and that the board had exceeded its authority in granting the comprehensive permit. The parties filed cross motions for summary judgment on the applicability of the provisions of the bylaw after Amherst had satisfied its minimum affordable housing obligation. A Land Court judge denied the plaintiffs' motion and allowed the defendants' motion, concluding that the Act permits a local zoning board to override restrictive zoning laws in its discretion even after a municipality has satisfied its minimum affordable housing obligation.

the units were to be set aside for people who live or work in Amherst, twenty per cent of the units were to be "set aside for minority households," and all of the units were to be "100% affordable in perpetuity."

[9]General Laws c. 40B, § 21, provides, in pertinent part, that "[a]ny person aggrieved by the issuance of a comprehensive permit or approval may appeal to the court as provided in [G. L. c. 40A, § 17]."

[10]In connection with this issue, the plaintiffs sought a declaration under G. L. c. 231A and a determination of the bylaw provisions' validity pursuant to G. L. c. 240, § 14A.

Further proceedings and a trial followed on the remaining issues. The Land Court judge entered judgment in favor of the defendants, affirming the board's decision. In his decision, in which he made numerous factual findings, the judge rejected the plaintiffs' claim that the board had "no standard" for acting on the comprehensive permit application. The judge explained that the same standard — whether the local bylaw is "consistent with local needs" — applies in situations where the town's affordable housing stock is either below, or over, the ten per cent statutory threshold. In either situation, the board must weigh the requirements of the local bylaw against the need for affordable housing, taking into account various factors set forth in the definition of the term "consistent with local needs." The judge found that the developer had satisfied its burden of proof at trial concerning the relevant factors, and that the comprehensive permit was properly granted. He also concluded that the plaintiffs lacked standing to challenge the condition of the comprehensive permit that set aside twenty per cent of the units in the proposed project for minority households. See note 8, *supra.* A judgment entered consistent with the judge's decision.

The plaintiffs moved to amend the judgment, asserting that the judge had erroneously determined that they lacked standing. The motion was denied. The plaintiffs filed a notice of appeal from the judgment and decision following trial, and from the denial of their motion to amend the judgment.

1. The parties have framed the issue before us in differing terms. The plaintiffs expressly acknowledge, as they must, that a local board of appeals may override local "requirements and regulations" (local zoning laws) even when a municipality's minimum affordable housing obligation has been met. See *Board of Appeals of Hanover* v. *Housing Appeals Comm.,* 363 Mass. 339, 354-355, 367 (1973) (*Hanover*).[11] The issue, as articulated by the plaintiffs, is whether, in so doing, a local board of ap-

---

[11]The *authority* of a local board of appeals to override local "requirements and regulations," including zoning ordinances and bylaws (local zoning laws), was confirmed in *Hanover, supra* at 354-355. In the *Hanover* case, we examined a municipality's affordable housing obligation as set forth in an earlier version of G. L. c. 40B, § 20, and stated that the provisions "define precisely the municipality's *minimum* housing obligations" (emphasis added). *Id.* at 366. We went on to explain that, "once the municipality has satisfied its

peals may employ the "regional need test" of G. L. c. 40B, § 20. The plaintiffs argue that a board of appeals may not use this test, and that, instead, "[t]he usual zoning laws are imposed in the usual way," meaning that the applicant must apply for a special permit or variance to override the local zoning laws when a municipality has satisfied its minimum affordable housing obligation. We disagree.

General Laws c. 40B, § 21, authorizes a board of appeals to grant or deny an application for a comprehensive permit. The plaintiffs correctly point out that nothing in § 21 indicates what standard a board of appeals should use to evaluate an application. The plaintiffs also correctly point out that this deficiency in the Act was addressed by us in the *Hanover* decision in our rejection of the claim that the lack of standards in the Act rendered it unconstitutionally vague, and in our conclusion that, construing the statute as a whole, the "consistent with local needs" standard of § 23 (and defined in § 20) is the standard to be used by a local board of appeals in evaluating an application for a comprehensive permit. *Hanover, supra* at 363-368.

Section 20 of the Act defines the phrase "[c]onsistent with local needs," first providing:

> "[R]equirements and regulations shall be considered consistent with local needs if they are reasonable[12] in view of the regional need for low and moderate income housing considered with the number of low income persons in the city or town affected and the need to protect the health or safety of the occupants of the proposed hous-

---

minimum [affordable] housing obligation, the statute deems local 'requirements and regulations,' including its restrictive zoning ordinances or by-laws, as 'consistent with local needs' and thereby enforceable by the board *if it wants to apply them.*" *Id.* at 367. We do not view these statements as dicta, and it necessarily follows that the converse of what is quoted above is true. That is, where a municipality has satisfied its minimum affordable housing obligation, a local board of appeals is not required to enforce local "requirements and regulations," and nothing in the statute imposes such a mandate. To the extent that any ambiguity existed for this proposition, we now put it to rest. To conclude otherwise would frustrate the purpose of the Act. See *id.* at 354.

[12]In the *Hanover* decision, we explained that "the term 'reasonable' is surplus verbiage which does not add any substance to the 'consistent with local needs' standard." *Id.* at 366 n.17.

ing or of the residents of the city or town, to promote bet-
ter site and building design in relation to the surroundings,
or to preserve open spaces, and if such requirements and
regulations are applied as equally as possible to both
subsidized and unsubsidized housing."

The plaintiffs refer to this portion of the definition as the
"regional need test," and we shall adopt this terminology for
purposes of discussion. The definition of "consistent with local
needs" goes on to state in the second sentence that "[r]equire-
ments or regulations shall be consistent with local needs when
imposed by a board of zoning appeals after comprehensive hear-
ing in a city or town" where a municipality has fulfilled its
minimum affordable housing obligation as therein defined, see
note 3, *supra.*

The plaintiffs assert that the two sentences in the definition of
"consistent with local needs" create two separate standards, and
that when a municipality has satisfied its minimum affordable
housing obligation, the local zoning laws, as a matter of law, can-
not be bypassed (unless the applicant satisfies the standards for
obtaining a variance or special permit), and that inquiry into the
"regional need test," as set forth in the first sentence, is improper.
The plaintiffs' argument is based on the difference between the
first sentence of the definition of "consistent with local needs,"
which states that local zoning laws "shall be *considered consistent*
with local needs" if they are reasonable in view of various fac-
tors, and the second sentence of the definition, which states that
when a municipality has satisfied its minimum affordable hous-
ing obligation, local zoning laws "*shall be consistent* with local
needs" (emphases added). G. L. c. 40B, § 20.

We construe the provisions of the Act in connection with the
purpose of its enactment and as a harmonious whole. See *Han-
over, supra* at 354, 364. The second sentence of the definition
of "consistent with local needs" sets forth "precisely the muni-
cipality's minimum [affordable] housing obligations." *Id.* at
366. The plaintiffs read too much into the absence of the word
"considered" in the second sentence of the definition. A plain
reading shows that, in circumstances where a municipality has
failed to satisfy its minimum affordable housing obligation, the
second sentence serves to foreclose a local board of appeals

from claiming that its decision to deny a comprehensive permit (and to enforce local zoning laws) is consistent with local needs and therefore automatically enforceable on review. This is so because "the municipality's failure to meet its minimum [affordable] housing obligations, as defined in § 20, will provide compelling evidence that the regional need for housing does in fact outweigh the objections to the proposal." *Hanover, supra* at 367. Thus, contrary to the plaintiffs' contention, application of the second sentence, even when a municipality has satisfied its minimum affordable housing obligation, serves a purpose and does not render the minimum affordable housing obligation in § 20 "meaningless surplusage."

Nothing in the definition of "consistent with local needs" in § 20, or in other provisions of the Act, divests a local board of appeals of its authority to grant a comprehensive permit once a municipality satisfies its minimum affordable housing obligation. See note 11, *supra*. Use of the phrase "when imposed by" in the second sentence of the definition of "consistent with local needs," indicates that a local board of appeals has been given discretion to decide whether *or not* to impose local zoning laws. See *International Org. of Masters, Mates & Pilots* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 392 Mass. 811, 813 (1984) ("Wherever possible, we give meaning to each word in the legislation; no word in a statute should be considered superfluous"). Because, under the second sentence, local zoning laws are not consistent with local needs unless they are "imposed" "after [a] comprehensive hearing," local boards of appeals must deliberate about whether to impose or override local zoning laws when a municipality has satisfied its minimum affordable housing obligation. If local boards of appeals were prohibited from issuing comprehensive permits beyond the statutory minimum, it would be meaningless to hold a "comprehensive hearing." When a local board of appeals decides *not* to enforce its local zoning laws, the second sentence of the definition ceases to apply, leaving the board of appeals to find, essentially, that the local zoning laws are *inconsistent* with local needs as assessed from the only remaining benchmark in § 20, namely, the regional needs test set forth in the first sentence of the definition of "consistent with local needs." Our

conclusion is bolstered by the central, overriding concern of the Act: consistency with local needs.

This conclusion does not frustrate the purpose of the Act. A municipality's attainment of its minimum affordable housing obligation in many cases does not eliminate the need for affordable housing within its borders. Local autonomy is not compromised. Once a municipality meets its minimum affordable housing obligation, the local board of appeals may exercise its discretion to apply its local zoning laws, and the board is not required to grant a comprehensive permit.[13] See *Hanover, supra* at 367. Application of the regional needs test, however, ensures that local boards of appeal will balance the competing considerations involved.

Some final observations are in order. If the Legislature had intended, in circumstances where a municipality had satisfied its affordable housing obligation, for a board of appeals to revert to granting variances or special permits in overriding local zoning laws, it would have so provided and would not have empowered a board of appeals with "the same power to issue permits or approvals as any local board or official who would otherwise act with respect to such application, including but not limited to the power to attach to said permit or approval conditions and requirements with respect to height, site plan, size or shape, or building materials as are consistent with the terms of this section." G. L. c. 40B, § 21. We disregard the regulations cited by the plaintiffs because they only apply to appeals to the housing appeals committee by an applicant whose comprehensive permit application was denied or was granted with conditions the applicant alleges render the proposed project uneconomic. See G. L. c. 40B, § 22; 760 Code Mass. Regs. § 31.02(1) (2004). Finally, our conclusion does not "needlessly infringe[]" on the "settled property rights of abutters." Rather, our conclusion takes into account that the Legislature "has clearly delineated that point where local interests must yield to the general public need for housing." *Hanover, supra* at 383.

---

[13]Even when a municipality has not satisfied its minimum affordable housing obligation, a local zoning board is not required to grant a comprehensive permit. See *Hanover, supra* at 366-367; *Zoning Bd. of Appeals of Greenfield* v. *Housing Appeals Comm.,* 15 Mass. App. Ct. 553, 562 n.13 (1983).

2. The plaintiffs maintain that the comprehensive permit is illegal because it contains an unconstitutional racial quota by requiring twenty per cent of the project's units to "be set aside for minority households." See note 8, *supra.* The plaintiffs base their claim of standing on the possibility that they, in the future, may "need to move to more affordable housing." "[U]nsubstantiated claims or speculative personal opinions" do not constitute a sufficient predicate on which to confer standing.[14] *Denneny* v. *Zoning Bd. of Appeals of Seekonk*, 59 Mass. App. Ct. 208, 212 (2003).

3. The judgment is affirmed. The order denying the plaintiffs' motion to amend the judgment is affirmed.

*So ordered.*

---

[14]We add as well that the issue is not ripe for review. Cf. *Lakeside Bldrs., Inc.* v. *Planning Bd. of Franklin*, 56 Mass. App. Ct. 842, 849 (2002) (claim not ripe because no "final authoritative determination" made). The comprehensive permit must be read together with the board's decision granting the comprehensive permit. In its decision, the board makes clear that the developer must apply to the Department of Housing and Community Development (department) for approval of the aspirational "set aside" for minority households. The board, therefore, appropriately deferred the issue to the department, the entity that the parties all agree is responsible for compliance with fair housing laws and regulations.