76 Mass. App. Ct. 467 (2010)                    467

Zoning Board of Appeals of Canton v. Housing Appeals Committee.

ZONING BOARD OF APPEALS OF CANTON VS. HOUSING APPEALS COMMITTEE & another.[1]

No. 08-P-1899.

Norfolk. September 10, 2009. - March 18, 2010.

Present: KATZMANN, BROWN, & WOLOHOJIAN, JJ.

*Housing. Zoning,* Low and moderate income housing, Housing appeals committee, Comprehensive permit. *Administrative Law,* Regulations, Substantial evidence, Judicial review. *Regulation.*

A Superior Court judge did not err in upholding a decision of the Housing Appeals Committee (committee) vacating the denial, by a town's zoning board of appeals (board), of an application for a comprehensive permit pursuant to G. L. c. 40B, §§ 20-23, for the construction of affordable housing units in the town, where there was no merit to the town's argument that requiring it to allocate more of its housing stock to affordable housing than the ten percent minimum required by G. L. c. 40B, § 20, was an unreasonable overage [468-472]; and where substantial evidence supported the committee's finding that the impact of the proposed development on traffic did not constitute a local safety concern outweighing the need for affordable housing [472-474].

CIVIL ACTION commenced in the Superior Court Department on October 27, 2005.

Following review by the Supreme Judicial Court, 451 Mass. 158 (2008), a motion for judgment on the pleadings was heard by *John P. Connor, Jr.,* J., and entry of judgment was ordered by him.

*Mark Bobrowski* for the plaintiff.

*David A. Guberman,* Assistant Attorney General, for Housing Appeals Committee.

*Brian M. Hurley* for Canton Property Holding, LLC.

KATZMANN, J. This case concerns an application for a comprehensive permit pursuant to G. L. c. 40B, §§ 20-23 (Act), and

[1]Canton Property Holding, LLC.

comes to us on appeal after the remand in *Zoning Bd. of Appeals of Canton* v. *Housing Appeals Comm.*, 451 Mass. 158 (2008) (*Canton I*). *Canton I* determined that because the town of Canton (town) was below the ten percent minimum established by G. L. c. 40B, § 20, when the town's zoning board of appeals (board) filed its decision denying the comprehensive permit application at issue here, the Housing Appeals Committee (HAC) had authority to consider the appeal of the permit applicant, Canton Property Holding, LLC (CPH), notwithstanding the fact that, while the matter was on appeal at HAC, the board approved construction of additional affordable units that would increase the town's affordable housing stock to more than twelve percent. *Id.* at 160-161. In doing so, the court reversed the decision of the Superior Court, and deferred to HAC's choice of the relevant date for determining the percent of affordable housing units in the town. *Id.* at 161-162. See 760 Code Mass. Regs. § 31.04(1)(a) (2004). The case was remanded for consideration of the grounds on which the board had denied the c. 40B permit. On remand, another judge of the Superior Court reviewed HAC's finding that the impact of the proposed development on traffic "did not constitute a local safety concern outweighing the need for affordable housing." The judge ruled that the finding was supported by substantial evidence, and upheld HAC's decision vacating the board's denial of the permit and ordering that the permit issue. The board appeals, arguing that (1) requiring the town to allocate 12.6 percent of its housing stock to affordable housing, as compared to the ten percent minimum required by G. L. c. 40B, § 20, is an "unreasonable overage"; and (2) the decision that traffic impacts did not warrant denial of the permit was not supported by substantial evidence.[2] We affirm.

We discuss the facts of the case and the statutory and regulatory context as pertinent to this appeal. For further background, see *Taylor* v. *Housing Appeals Comm.*, 451 Mass. 149 (2008); *Canton I, supra.*

*Discussion.* 1. *"Unreasonable overage."* The permit application at issue is for construction of 227 units of housing on Randolph Street in the town (Canton Project), most of which would

---

[2]On remand, the board no longer pursued its earlier argument that the permit should be denied because of storm water concerns.

be rental units. All of the proposed units would qualify for inclusion in the town's inventory of low and moderate income housing. At the time of the board's decision denying the permit, the percentage of low or moderate income housing in the town was 7.87 percent. Subsequently, while CPH's appeal from the board's permit denial was pending at HAC, the board entered into a settlement with another developer, agreeing to issue comprehensive permits for 180 units of low and moderate income housing (the Pequit projects). This agreement increased the number of low and moderate income housing units in the town to approximately 12.6 percent of all units. HAC found that "12 percent is not unreasonable," observing that "at least under the facts presented here, assuming that 180 Pequit units would be included in the housing inventory, that number would include both market rate and affordable units in the project."[3] Arguing that 12.6 percent is an "unreasonable overage" as compared with the ten percent minimum set forth in G. L. c. 40B, § 20, the board characterizes HAC's finding as unreasonable on its face, and an error of law.

The board's "unreasonable overage" argument is not supported by the Act or by case authority. Attainment of the ten percent minimum at the time prescribed by the regulations will deprive HAC of jurisdiction to hear an appeal from a local board's denial of a comprehensive permit application. See *Canton I, supra* at 159 n.2, 161. However, attainment of the ten percent will not necessarily demonstrate that a locality's need for affordable housing has been satisfied. See *Boothroyd* v. *Zoning Bd. of Appeals of Amherst*, 449 Mass. 333, 341 (2007) ("A municipality's attainment of its minimum affordable housing obligations in many cases does not eliminate the need for affordable housing within its borders").

Where, as here, the town has taken no actions that would deprive HAC of authority to hear an appeal, the regulatory scheme governing HAC review of comprehensive permit denials is as follows. The board bears the burden of proving, first, that there is a valid local concern which supports the permit denial, and, second, that such concern outweighs the regional housing need. 760 Code Mass. Regs. § 31.06(6). Where, as here, the town

---

[3]According to the town's "Housing Action Plan" in the record appendix, sixty-one of the 180 Pequit units would be dedicated to the c. 40B program.

has not achieved the ten percent minimum by the prescribed date, see 760 Code Mass. Regs. § 31.04(1)(a), there shall be a rebuttable presumption that there is a "substantial regional housing need which outweighs local concerns." 760 Code Mass. Regs. § 31.07(e), citing *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 367 (1973) (*Hanover*). Where the town attempts to rebut the presumption, 760 Code Mass. Regs. § 31.07(2) prescribes the factors to be considered in balancing the housing need (that is, the proportion of low income residents in the town or region) against the local concerns.[4] Rather than setting forth evidence concerning the low income population in the region, the board, both in its argument to HAC and to this court, continues to conflate attainment of the ten percent minimum with satisfaction of the need for affordable housing. As HAC noted in its decision, the board's argument "is misplaced. How close the town is to the 10 percent minimum is not the issue." See *Boothroyd*, 449 Mass. at 341.

Nor is *Zoning Bd. of Appeals of Greenfield* v. *Housing Appeals Comm.*, 15 Mass. App. Ct. 553 (1983) (*Greenfield*), cited by the board, to the contrary. *Greenfield* held that "G. L. c. 40B, § 20, authorizes HAC to issue a permit for a project where the completion of the contemplated units will cause the ten percent

---

[4]Title 760 Code Mass. Regs. § 31.07 provides:

"(2) *Balancing.* If a town or city attempts to rebut the presumption that there is a substantial regional housing need which outweighs local concerns,

"(a) the weight of the housing need will be commensurate with the proportion of the city or town's population that consists of low income persons; if few or no low income persons reside in the city or town, the strength of housing need will consist of regional need alone,

"(b) the weight of the local concern will be commensurate with the degree to which the health and safety of occupants or town residents is imperiled, the degree to which the natural environment is endangered, the degree to which the design of the site and the proposed housing is seriously deficient, the degree to which additional open spaces are critically needed in the city or town, and the degree to which the local requirements and regulations bear a direct and substantial relationship to the protection of such local concerns, and

"(c) a stronger showing shall be required on the local concern side of the balance where the housing need is relatively great than where the housing need is not as great."

requirement to be exceeded by a reasonable number." *Id.* at 562. In response to the town's argument in *Greenfield* that such a policy "would allow HAC to compel a municipality which is but a few units short of meeting its minimum housing obligation to issue a permit for development of hundreds of units," *id.* at 562 n.13, the court observed that towns below the ten percent minimum are not compelled to issue comprehensive permits in every case. Rather, the court noted, citing G. L. c. 40B, § 20, "In such case[s] the statute imposes a general test of reasonableness predicated on the regional need for low and moderate income housing; the number of low income people in the affected municipality; health and safety considerations; and the promotion of compatible site and building design and preservation of open spaces." *Ibid.* See 760 Code Mass. Regs. § 31.07 (note 4, *supra*). The court further observed, "We think the statute provides an adequate decisional framework for dealing with the problem of proposed developments which could cause a community to overshoot substantially the ten percent benchmark for low and moderate income housing." *Greenfield, supra.* Thus, the *Greenfield* court found adequate the decisional framework we have described above,[5] which, for proposals in the posture of the present matter, places the burden on the board to overcome a rebuttable presumption that the local or regional housing need outweighs the local concerns underlying the denial of a comprehensive permit.[6] We turn then to the projected traffic impact

---

[5]Although the HAC regulations have been amended since the *Greenfield* decision, the regulations governing this case take their authority from the Act, upon which *Greenfield* relied. No argument has been made that HAC was without authority to adopt the regulations pertinent here. See *Taylor,* 451 Mass. at 153-155; *Canton I,* 451 Mass. at 161.

[6]We also note that the concern raised in *Greenfield* regarding the potential for inordinately large numbers of c. 40B units in a given town is further addressed by the HAC regulations. In cases where the ten percent minimum discussed in *Canton I* has not been satisfied, the HAC regulations provide additional means for assessing the concentration of affordable housing in a municipality. For example, as to the total land area occupied by affordable housing, see G. L. c. 40B, § 20; 760 Code Mass. Regs. § 31.04(2), (3). As to the total number of affordable housing units, see, e.g., 760 Code Mass. Regs. § 31.07(1)(d) (irrebuttable presumption that denial of application is consistent with local needs if, during the twelve months prior to the date of the comprehensive permit application, town has added affordable units equal to or greater than two percent of town's total housing units). See also, e.g., 760 Code Mass. Regs. § 31.07(1)(g)(1) (in municipality with 7,500 or more total housing

of the project, which was the board's substantive reason for denying the comprehensive permit.

2. *Substantial evidence.* The board argues that HAC's ruling should be overturned because its determinations as to the projected traffic impacts of the Canton Project were not supported by substantial evidence. The board points to expert testimony which it claims shows that a decrease in the level of service at the intersection of Route 138 and Randolph Street, some two miles west of the entrance to the Canton Project, would result in a greater accident rate and have an impact on safety.

HAC found that the evidence submitted by the board regarding increases in traffic delay as a result of the proposed project showed "that the Board has focused more on the issue of convenience," and concluded that "[c]onvenience is not a local safety issue or other local concern that outweighs the need for affordable housing." Thus, HAC concluded that the board failed to meet its burden to show that the traffic congestion caused by the proposed development would pose a sufficiently high safety concern to outweigh the regional need for affordable housing.

Because we are examining conclusions of law upon the same record as the Superior Court judge, our review of the judge's decision proceeds de novo. Compare *Professional Fire Fighters of Mass.* v. *Commonwealth,* 72 Mass. App. Ct. 66, 73 (2008). The scope of judicial review of a HAC decision is determined by G. L. c. 30A, § 14. See G. L. c. 40B, § 22. See also *Zoning Bd. of Appeals of Wellesley* v. *Housing Appeals Comm.,* 385 Mass. 651, 657 (1982). In reviewing HAC's decision, we "must examine the committee's decisions upon consideration of the entire record" and determine whether there was "substantial evidence," that is, "such evidence as a reasonable mind might accept as adequate to support" HAC's decision. *Hanover,* 363 Mass. at 376 (internal quotations omitted). The board, as the appealing party, has the "heavy" burden of showing that the agency decision of the HAC is not supported by substantial evidence. *DSCI Corp.* v. *Department of Telecomm. & Energy,* 449 Mass. 597,

units, where comprehensive permit is sought for construction of more than 300 units, or units equaling two percent of all housing units in the town, whichever is greater, decision denying permit application shall be deemed consistent with local needs). No suggestion has been made that any of the above provisions or any other such "exceptions" provided for in the HAC regulations apply here.

603 (2007). We are required to "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it" by statute. G. L. c. 30A, § 14(7). The reviewing court "may not displace an administrative [agency's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Zoning Bd. of Appeals of Wellesley, supra.* Moreover, where, as here, a decision rests in part on an agency's assessment of witnesses, we give "particular deference to credibility determinations and inferences drawn from the facts." *Collamore* v. *Office of Campaign & Political Fin.*, 67 Mass. App. Ct. 315, 322 (2006). See *Morris* v. *Board of Registration in Med.*, 405 Mass. 103, 111, cert. denied, 493 U.S. 977 (1989). In reviewing HAC's decision to vacate a permit denial, we must apply the "substantial evidence" standard in light of the heavy burden borne by a local board that denies a comprehensive permit application; that burden requires proof of a specific health or safety concern of sufficient gravity to outweigh the regional housing need. *Hanover*, 363 Mass. at 367, 376. An agency decision will be upheld "unless it is based on an error of law, unsupported by substantial evidence, unwarranted by facts found on the record as submitted, arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." *DSCI Corp.* v. *Department of Telecomm. & Energy*, 449 Mass. at 603, quoting from *Massachusetts Inst. of Tech.* v. *Department of Pub. Utils.*, 425 Mass. 856, 867-868 (1997).

After a four-day hearing in which it heard witnesses and considered exhibits, HAC found that the board's evidence of traffic congestion proved merely an inconvenience. Relying on its own precedents, HAC concluded that "in traffic cases, questions of inconvenience are not enough; there must be significant public safety concerns," and thus found the board's traffic concerns insufficient to outweigh the regional need for affordable housing.[7,8] See 760 Code Mass. Regs. § 31.07(2).

---

[7]While making this finding, HAC also ruled that "in light of the developer's offers of mitigation . . . we will require as a condition of the comprehensive permit that CPH perform the traffic mitigation measures it has offered."

[8]Although the HAC regulations no longer prescribe how to measure the

HAC could permissibly find that the evidence regarding increased traffic and longer traffic queues at the intersection constituted evidence of inconvenience, but not of any significant safety concern. It was permissible for HAC to take into account the distance of the intersection from the development (two miles) and how the intersection will be affected by traffic from other areas of town and those traveling through town. HAC expressed serious doubts as to the credibility of the board's expert's projections and remarked generally that the reality of the traffic at the intersection resulting from the project cannot be predicted with any certainty. HAC was entitled to discount so much of the board's evidence of safety concerns as relied primarily on these projections. Moreover, based on its expertise in deciding similar cases, HAC was entitled to find that even if there is increased congestion, that condition here would not rise to the level of a significant local safety concern.[9]

*Conclusion.* The judgment of the Superior Court upholding the HAC decision granting CPH a comprehensive permit is affirmed.

*So ordered.*

---

need for affordable housing, see, e.g., 760 Code Mass. Regs. § 30.02(l) (1985), there are instructive examples in the case law. See, e.g., *Hanover,* 363 Mass. at 376-377; *Boothroyd,* 449 Mass. at 336.

[9]The board also challenges HAC's conclusion that the "extent of development permitted and the uneven approach to [traffic] mitigation requirements imposed by the town indicate that there is not a significant public safety concern." In its decision, HAC found that the board had allowed a number of "commercial and unsubsidized residential developments with significant intersection impacts to go ahead with limited or no mitigation requirements." While there appears to be support in the record for this finding of inconsistent mitigation, we need not address its probative value, because quite apart from it, based on all the evidence considered, the board has not met its burden of demonstrating that HAC's decision was not supported by substantial evidence.