SUPERIOR COURT 
 
 TERRENCE MARENGI, JR., TIFFANY MARENGI, and others[1] vs. 6 FOREST ROAD, LLC and SALISBURY ZONING BOARD OF APPEALS

 
 Docket:
 2177CV00933
 
 
 Dates:
 March 3, 2023
 
 
 Present:
 Jeffrey T. Karp Associate Justice, Superior Court
 
 
 County:
 ESSEX, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER AFTER REMAND O N MOTION OF PRIVATE DEFENDANT FOR PLAINTIFFS T O POST APPEAL BOND (Paper No. 6) and MOTION TO REIMPOSE ORDER TO POST BOND ON REMAND (Paper No. 21)
 
 

             This is an action for judicial review of the granting of a comprehensive permit pursuant to the Massachusetts Comprehensive Permit Act, G.L. c. 40B, §21 (“Act”), to defendant 6 Forest Road, LLC (“LLC”), by defendant Salisbury Zoning Board of Appeals (“ZBA”) to build 56 residential condominium units in Salisbury (“Town”), fourteen of which will be set aside as so-called “affordable” units for lower income residents (“Project”). Plaintiffs Terrence Marengi, Jr., Tiffany Marengi, George S. Mowbray, Jr., Lori Mowbray, Stephen Pivacek, Nancy Pivacek, Lynn Welch, and Daniel Welch are direct abutters and non-abutters of the land upon which the Project will be constructed.
            On February 24, 2023, after remand from the SJC, the Court conducted a hearing on the Motion Of Private Defendant For Plaintiffs To Post Appeal Bond (“Bond Motion”) (Paper No. 6) and the LLC’s Motion To Reimpose Order To Post Bond
 
-------------------------------------
 
[1] George S. Mowbray, Jr., Lori Mowbray, Stephen Pivacek, Nancy Pivacek, Lynn Welch, and Daniel Welch.
 
                                                            -1-
 
Pursuant To G.L. c. 40A, § 17, On Remand (“Remand Motion”) (Paper No. 21) (collectively, “Motions”).
            For the reasons fully explained below, the Motions are A LLOWED in part.
RELEVANT PROCEDURAL HISTORY
            In March 2022, the LCC filed the Bond Motion requesting the court to require the plaintiffs to post a bond of $50,000 to secure payment of its costs pursuant to G.L. c. 40A, § 17, third para. (“Bond Provision”), a relatively new statutory provision. The plaintiffs opposed the Bond Motion and argued, inter alia, that the Bond Provision is not applicable in an action for judicial review of the issuance of a comprehensive permit under G.L. c. 40B, like this action.
            On March 17, 2022, this Court ruled that the Bond Provision applies in an action for judicial review of the issuance of a comprehensive permit under G.L. c. 40B and allowed (in part) the Bond Motion. This Court ordered that the plaintiffs post a surety or cash bond in the amount of $35,000 to secure payment of the LLC’s costs.2
            The plaintiffs sought leave before a Single Justice of the Appeals Court to file an interlocutory appeal of the bond order. The Single Justice granted the plaintiffs leave to file an interlocutory appeal and the SJC transferred the case to it sua sponte. See Marengi v. 6 Forest Rd. LLC, 491 Mass. 19, 23 - 24 (2022).
            On December 14, 2022, the SJC held that “the bond provision set out in G.L. c.
40A, § 17, applies to comprehensive permits issued under G.L. c. 40B, § 21, . . . [because] such permits are reviewed pursuant to G.L. c. 40A, § 17, and necessarily include . . . site plans, which are referenced explicitly in the provision.” Id. at 20. In so
 
-------------------------------------
 
[2] The ruling was made via a margin endorsement order on the Bond Motion. See Paper No. 6.
 
                                                            -2-
 
doing, the SJC announced for the first time “what costs are recoverable under the [B]ond [P]rovision,” id., and “explicat[ed] the statutory requirements” for ordering a bond. Id. at 21.
            The SJC vacated this Court’s bond order and remanded the matter because the undersigned “judge’s ruling predates [the SJC’s] decision clarifying the standards for the issuance of the bond, and [the SJC] c[ould] not determine, based on the judge’s limited explanation, whether he properly exercised or abused his discretion in ordering the $35,000 bond.” I d. at 36.
            This Court’s hearing on the Motions on February 24, 2023, followed.
THE PROJECT
            In Marengi, the SJC summarized the relevant permitting aspects of the Project, as follows:
On November 20, 2020, the developer, 6 Forest Road LLC, initially applied to the zoning board of appeals of Salisbury (board) for a comprehensive permit to build seventy-six condominium units at 6 Forest Road in Salisbury. The proposal included site plans, which were revised as the permitting process proceeded, with the final plan featuring fifty-six condominium units, including fourteen affordable units (project). After ten days of public hearings, on July 27, 2021, the board, in a twenty-eight page decision, approved the application and granted the developer a comprehensive permit, subject to ninety-six conditions. The board found that, with these conditions, the project “promote[s] affordable housing while taking into consideration [l]ocal [c]oncerns,” such as ensuring public health and safety, preserving “the natural environment” and “[o]pen [s]paces,” and promoting local planning goals. As part of the approval process, the board also granted various waivers.
Id. at 21.
 
                                                            -3-
 
I. S TATUTORY FRAMEWORK
            “The Massachusetts Comprehensive Permit Act, G.L. c. 40B, §§ 20-23 ([A]ct), provides qualifying developers of low or moderate income housing with access to a single comprehensive streamlined permitting process and expedited appeal before the housing appeals committee (HAC).” Zoning Bd. of Appeals of Milton v. HD/MW Randolph Ave., LLC, 490 Mass. 257, 258 (2022).
            According to the SJC:
A key aspect of the Act’s framework is the requirement that each municipality devote ten percent of its housing units to low or moderate income housing In order to encourage and expedite the construction of such housing, the Act ‘streamlines’ the permitting process by allowing a developer who wants to construct low or moderate income housing to file a single application for a comprehensive permit with the local zoning board of appeals rather than seeking separate approval from each local board having jurisdiction over the projectMunicipalities may grant or deny such permits in light of their obligations under the Act to achieve the ten percent statutory minimum.
Town of Hingham v. Dep’t of Hous. & Cmty. Dev., 451 Mass. 501, 502 – 503 (2008) (citations omitted).
            The judicial review procedures set forth in G.L. c. 40A, § 17 (regarding decisions of ZBAs and special permit granting authorities) are followed in actions for judicial review of comprehensive permits. G.L. c. 40B, § 21 (“Any person aggrieved by the issuance of a comprehensive permit or approval may appeal to the court as provided in [G.L. c. 40A, § 17].”).
 
                                                            -4-
 
            According to a recent amendment to G.L. c. 40A, § 17 , which added the Bond Provision:
The court, in its discretion, may require a plaintiff in an action under this section appealing a decision to approve a special permit, variance or site plan to post a surety or cash bond in an amount of not more than $50,000 to secure the payment of costs if the court finds that the harm to the defendant or to the public interest resulting from delays caused by the appeal outweighs the financial burden of the surety or cash bond on the plaintiffs. The court shall consider the relative merits of the appeal and the relative financial means of the plaintiff and the defendant. 
G.L. c. 40A, § 17, third par. (emphasis added).[3]
            “[T]he purpose of the bond provision in G.L. c. 40A, § 17, is to serve as an additional deterrent to meritless appeals,” Marengi, 491 Mass. at 29, and “‘to secure the payment of costs.’” I d. (original emphasis). Such costs do not include attorney’s fees or delay damages. I d. at 33. However, they do “extend beyond ‘taxable costs,’” id. at 32, and “include the ‘actual, reasonable costs’ directly incurred by litigating the appeal, . . . the most significant of which often will be expert witness fees.” Id. at 34 – 35. In the instant case, the SJC concluded that “additional consultant fees (engineering, traffic, environmental) [to be incurred by the LLC] in order to provide testimony during the course of th[is] litigation . . . are also reasonable recoverable costs” under the Bond Provision. I d. at 35.
            As for the standard for imposing a bond, “the [B]ond [P]rovision requires a preliminary determination regarding the ‘relative merits of the appeal.’ . . . Unless such preliminary determination demonstrates that the appeal appears so devoid of merit as to support an ultimate determination of bad faith or malice, no such bond should be imposed.” Id. at 20 – 21 (citation omitted) (emphasis added). Said differently, “the court
 
-------------------------------------
 
[3] St. 2020, c. 358, § 25, added the third paragraph to § 17, which became effective on January 14, 2021.
 
                                                            -5-
 
should only order a bond if the judge finds that a plaintiff’s appeal appears so devoid of merit that it may be reasonably inferred to have been brought in bad faith.” Id. at 31.
            After this “preliminary determination,” the Bond Provision requires the court to consider “the relative financial means of the plaintiff and the defendant,” and to “expressly weigh ‘the harm to the defendant or to the public interest resulting from delays caused by the appeal’ and explain whether that ‘outweighs the financial burden of the surety or cash bond on the plaintiffs.’” Id. at 36 (citation omitted).
            With these legal principles in mind, the Court will now turn to the merits of the LLC’s request to impose a bond.
II. THE PLAINTIFFS’ APPEAL APPEARS SO DEVOID OF MERIT THAT I T MAY BE REASONABLY INFERRED TO HAVE BEEN BROUGHT IN BAD FAITH
            As stated, the Court must first make a preliminary determination of whether the plaintiffs’ “appeal appears so devoid of merit that it may be reasonably inferred to have been brought in bad faith.” Id. at 31.
            In their Complaint, the plaintiffs allege that the ZBA acted arbitrarily and capriciously (and abused its discretion) in granting the comprehensive permit because:
1. The LLC lacked site control at the time of the application because its purchase and sale agreement (“P&S”) to purchase the property had expired;
2. the ZBA granted the permit after the Town had reached (and exceeded) the aforementioned statutory ten percent minimum allotment of low and moderate income housing units;
3. the ZBA failed to fully consider the impact of the Project on the plaintiffs’ land, such as wetlands, water quality and public safety impacts; and,
4. the ZBA granted the LLC authority to build 16 units more than the 40 units it contemplated in its P&S, and the LLC lacked economic justification for doing so.
 
                                                            -6-
 
            The LLC addressed the merits of most of these claims in some detail in its memoranda in support of the Motions. See Paper Nos. 6.1, 6.3, and 21. For their part, the plaintiffs addressed the merits of their claims in a conclusory manner, see Paper No. 6.2, or not at all. See Paper No. 23.1. To be sure, “the plaintiffs averred that the [P] roject would cause ‘unique harms that threaten the health, safety and quiet enjoyment of [their] properties,’ as documented in a single affidavit from one of the abutters. That affidavit only provided the following conclusory statement: ‘I am actually aggrieved because the project will cause unique harms to my property, including public health and safety impacts, as alleged in the [c]omplaint.’” Marengi, 491 Mass. at 23.
            Nevertheless, it is the LLC that bears the burden to show that the “appeal appears so devoid of merit that it may be reasonably inferred to have been brought in bad faith.” I d. at 31. So, the Court will address the merits of the plaintiffs’ claims, in turn.
A. T he Plaintiffs’ Claim That The ZBA Erred In Issuing The Permit Because The LLC Lacked Site Control Is Devoid Of Merit
            The plaintiffs allege in their Complaint that the LLC lacked site control at the time of the application because its P&S to purchase the property had expired.
            “To be eligible to submit an application to a Board for a Comprehensive Permit or to file or maintain an appeal before the Committee,[4] the Applicant and the Project shall [inter alia] . . . (c ) . . . control the site.” 760 Code Mass. Regs. § 56.04(1). “Compliance with these project eligibility requirements shall be established by issuance of a written determination of Project Eligibility by the Subsidizing Agency[5]” Id.
 
-------------------------------------
 
[4]“Committee - means the Housing Appeals Committee, also referred to as ‘HAC.’” 760 Code Mass. Regs. 56.02.
 
[5] “Subsidizing Agency - means any agency of state or federal government that provides a Subsidy for the construction or substantial rehabilitation of Low or Moderate Income Housing.” 760 Code Mass. Regs. 56.02.
 
                                                            -7-
 
            Citing Board of Appeals of Hanover v. Housing Appeals Comm., 363 Mass. 339 (1973), the LLC argues that the subsidizing agency is solely responsible for determining site control under the Act, not the ZBA or any Town official. The Court agrees. See id. at 378 (“the Legislature intended to define the requisite property interest for a permit in terms of the selected financing agency’s property interest requirements.”). Moreover, the Act “does not require the applicant for a comprehensive permit to establish before the board or committee a present title in the proposed site.” Id. at 378.
            Here, there is very little dispute that the LLC had a valid agreement to purchase the land upon which the Project would be built at all pertinent times. In fact, the plaintiffs do not argue otherwise. Rather, at the hearing, the plaintiffs explained that in drafting the complaint, they simply recognized that the P&S had expired as of the date the LLC submitted its application to the ZBA and that, under the regulations, site control is a jurisdictional prerequisite.
            In sum, the Court rules that the plaintiffs’ claim that the ZBA erred by granting the permit even though the LLC was out of contract to purchase the land at the time of the application “is so devoid of merit that it may be reasonably inferred to have been brought in bad faith.” Marengi, 491 Mass. at 31.
B. The Plaintiffs’ Claim That The ZBA Erred In Issuing The Permit By “Unwittingly” Failing To Invoke The Statutory Minimum Is Devoid Of Merit
            The plaintiffs allege in their Complaint that the ZBA erred because it granted the LLC’s permit well after the Town had reached the statutory ten percent minimum affordable housing obligation, something that the LLC does not dispute.
 
                                                            -8-
 
            At the hearing, the plaintiffs conceded that under Boothroyd v. Zoning Bd. of 
Appeals, 449 Mass. 333 (2007), the Town can avail itself of Chapter 40B even after it exceeds the ten percent minimum. Id. at 340 (“Nothing in the provisions of the Act, divests a local board of appeals of its authority to grant a comprehensive permit once a municipality satisfies its minimum affordable housing obligation.”). Nevertheless, here, according to the plaintiffs, the ZBA “unwittingly” failed to invoke the statutory minimum and it purportedly didn’t recognize that it had the power to do so, as evidenced by the ZBA’s purported failure to address the statutory minimum in its decision granting the permit. Complaint, ¶¶ 49, 62. However, this argument is speculative, immaterial, and lacks merit because the ZBA is not required to deny a request for a comprehensive permit merely because the Town has already satisfied its affordable housing obligations.
            Therefore, the Court rules that the plaintiffs’ claim that the ZBA erred because it granted the LLC’s permit after the Town had reached the statutory ten percent minimum affordable housing obligation “is so devoid of merit that it may be reasonably inferred to have been brought in bad faith.” Marengi, 491 Mass. at 31.
C. The Plaintiffs’ Claim That The ZBA Erred In Issuing The Permit By Failing To Fully Consider The Impact Of The Project O n The Plaintiffs’ Abutting Land Is Devoid Of Merit
            The plaintiffs claim in their Complaint that the ZBA failed to “fully vet[] impacts on Plaintiffs’ abutting properties, including public health effects from water quality and quantity, public safety effects from the dead end road that is more than three times the length allowed, and environmental impacts to the extensive wetlands on the Project Site.” Complaint, ¶ 65. Yet, the only other mention in the Complaint (or elsewhere in the
 
                                                            -9-
 
record) of these impacts is in ¶ 22 where the plaintiffs simply quote Condition 69 of the ZBA’s decision, which requires testing of their wells for quality and quantity. In other words, the plaintiffs fail to state how the ZBA purportedly failed to “fully vet” the impacts. Moreover, even a cursory review of the ZBA’s decision belies this claim. See e.g., ZBA Decision at ¶¶ 8, 10, 14, 62, 69.
            At the hearing, the plaintiffs argued that at least one of the direct abutters is “uniquely impacted” by the permit because their well will need to be tested. However, there is no dispute that the abutters (and others) will be impacted by the Project. The relevant question for the Court is whether the plaintiffs’ claim that the ZBA acted arbitrarily or capriciously by failing to “fully vet” the impacts is “is so devoid of merit that it may be reasonably inferred to have been brought in bad faith.” Marengi, 491 Mass. at 31. The Court concludes that this claim is devoid of merit.[6]
III.  THE HARM TO THE PUBLIC INTEREST AND THE LLC FROM THE DELAY CAUSED BY THE APPEAL OUTWEIGHS THE FINANCIAL B URDEN OF THE SURETY OR CASH BOND ON THE PLAINTIFFS
            Having made the “preliminary determination” that the plaintiffs’ appeal is “so devoid of merit as to support an ultimate determination of bad faith or malice,” id., the Court must “expressly weigh ‘the harm to the defendant or to the public interest resulting from delays caused by the appeal’ and explain whether that ‘outweighs the financial burden of the surety or cash bond on the plaintiffs.’” Id. at 36 (citation omitted).
            The Court must also consider “‘the relative financial means of the plaintiff and the defendant.’” Id. at 35 (citation omitted).
 
-------------------------------------
 
[6] As stated, the plaintiffs also allege that the ZBA erred by granting the LLC authority to build 16 units more than the 40 units it contemplated in the P&S, and the LLC lacked economic justification for doing so. However, neither the LCC nor the plaintiffs address the merits of this allegation; thus, the Court declines to do so.
 
                                                            -10-
 
            With respect to the harm to the public interest, the Court finds the LLC’s analysis in Section II(i) at pp. 9 - 10 of the Remand Motion to be persuasive and the Court adopts the same reasoning here.[7]
            As for the harm to the LLC, the Court finds that the delay caused by the appeal has, and will continue to, significantly harm its wherewithal to finance the Project, especially when considering the current atmosphere of rising interest rates.
            Furthermore, the delay is adversely affecting the LLC’s wherewithal to secure the materials and labor during these times of increasing costs and shortages.
            As for the financial burden on the plaintiffs to secure a bond, “the financial burden to secure a $35,000 bond is by no means negligible,” id. at 35, notwithstanding the LLC’s argument otherwise. Moreover, the Marengis cannot access any equity in their home to secure a bond without refinancing their existing mortgage (likely at a higher rate). See Marengi Affidavit, ¶ 8. Nevertheless, the cost of the bond will presumably be shared four ways by the eight plaintiffs.
            As for the relative financial means of the plaintiffs and the LLC, the record evidence and information is sparse. As for the financial means of the plaintiffs, the LLC points to the value of their homes. In response, the plaintiffs argue that the home values are “irrelevant because they cannot borrow against them without remortgaging, and whatever equity they may have pales in comparison to the millions in profit [the LLC] will reap from the project.” Plaintiffs’ Opposition, p. 5; see also p. 9 (same) (Paper No. 6.2). However, only one of the plaintiffs, Marengi, filed an affidavit and it only speaks to his
 
-------------------------------------
 
[7] In particular, “delays caused by th[is] appeal,” G.L. c. 40A, § 17, third par., significantly harm the public’s interest in adding 56 much-needed housing units, fourteen of which will be “affordable.”
 
                                                            -11-
 
ability to access equity in his home. See Marengi Affidavit, ¶ 8. Moreover, the plaintiffs do not dispute that the collective assessed value of their homes is in excess of $2.3M.
            As for the financial means of the LLC and its “principal,” Steven Paquette (“Paquette”), although it does not directly address his financial means, Paquette’s affidavit enumerates many large real estate projects that he has developed. Based on this information, the Court assumes that his financial means are greater than that of the plaintiffs.
            Weighing the above referenced factors and information, the Court rules that the aforementioned harm to the public interest and the LLC from the delay caused by the appeal outweighs the financial burden of the surety or cash bond on the plaintiffs. Therefore, under the circumstances, the Court exercises its discretion to require the plaintiffs to post a bond in this action.
            IV.  THE AMOUNT OF THE SURETY OR CASH BOND
            The remaining issue for the Court to address is the amount of the bond, which is used to secure payment of “the ‘actual, reasonable costs’ directly incurred by litigating the appeal, . . . the most significant of which often will be expert witness fees.” Id. at 34 – 35. Here, the LLC claims that it will incur engineering, traffic, and environmental consulting and witness fees in this action, which “could easily exceed $50,000.” Paquette Affidavit, ¶ 23. The Court agrees given the myriad “impact” and other arguments made by the plaintiffs in this action. Therefore, a bond in the amount of $35,000 is fair and reasonable under the circumstances, and the Court will set the amount of the surety or bond at that amount.
 
                                                            -12-
 
ORDER
            For the above reasons, it is HEREBY ORDERED that:
            1. Motion Of Private Defendant For Plaintiffs To Post Appeal Bond (“Bond Motion”) (Paper No. 6) is ALLOWED in part.
            2. Motion To Reimpose Order To Post Bond Pursuant To G.L. c. 40A, § 17, On Remand (Paper No. 21) is ALLOWED in part.
            3. The plaintiffs shall post a surety or cash bond in the amount of $35,000 by March 15, 2023.
 
 
                                                            -13-
 
xxz